No. 3--07--0881
(Consolidated with No. 3--08--0350)

Filed November 18, 2009

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2009

| | | |
|---|---|---|
| CHARLES W. DUNN and CHARLOTTE E. DUNN, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit Will County, Illinois |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 07--MR--399 |
| LAWRENCE F. PATTERSON, | ) ) | Honorable Barbara Petrungaro, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHMIDT delivered the opinion of the court:

Plaintiffs, Charles and Charlotte Dunn, brought a declaratory judgment action against defendant, Lawrence Patterson, the attorney who prepared an estate plan for them. The circuit court of Will County entered judgment on the pleadings, finding, as a matter of law, that provisions in certain estate planning documents prepared by defendant were contrary to public policy and void. The trial court thereafter awarded attorney fees constituting a Supreme Court Rule 137 (155 Ill. 2d R. 137) sanction against defendant in the amount of

$5,393.75.

Patterson appeals, arguing: (1) the trial court erred in finding the provisions requiring his consent, or alternatively, an order of the court to amend or revoke the estate planning documents to be contrary to public policy; and (2) the trial court abused its discretion by awarding Rule 137 sanctions. We reverse and remand.

BACKGROUND

Charles and Charlotte Dunn hired defendant, attorney Lawrence Patterson, to, *inter alia*, prepare certain estate planning documents for them. Patterson prepared the following documents, all dated June 12, 2006: (1) Charles W. Dunn and Charlotte E. Dunn joint declaration of trust; (2) living will declaration of Charles W. Dunn; (3) living will declaration of Charlotte E. Dunn; (4) limited durable power of attorney of Charles W. Dunn; and (5) limited durable power of attorney of Charlotte E. Dunn.

Each of these documents contained a qualified amendment and revocation provision, which provided that any amendment or revocation of the documents may only be executed with the written consent of Patterson or by order of the court. The twelfth paragraph of the "Joint Declaration of Trust (Conditionally

Amendable and Revocable)" provides:

> "**QUALIFIED RIGHT TO AMEND AND/OR REVOKE.** Charles W. Dunn and Charlotte D. Dunn acting jointly or the survivor of them, may, **at any time or times, amend or revoke this Joint Declaration of Trust, in whole or in part,** by instrument in writing (other than a Will) delivered to the acting Trustee; subject however to the receipt of the **written consent of Attorney LAWRENCE F. PATTERSON, whose signature on said written consent form is <u>Medallion Certified</u>** (whether Attorney Lawrence F. Patterson is then acting as the Attorney at Law for either one or both of us, or has been discharged as said Attorney for either one or both of us, orally or in writing) **or, <u>in the alternative, receipt of the written consent of a Court having jurisdiction</u>, upon Petition filed by said Attorney or by any other interested person.**" (Emphasis in original.)

Both Charles and Charlotte Dunn's limited durable power of attorney (health care) and living wills contain the following provision:

> "**Qualified Amendment and Revocation.** SECTION 1. <u>Any provisions in the Laws of the State of Illinois or</u>

3

in this instrument to the contrary notwithstanding, I hereby reserve the power to amend or revoke this Power of Attorney at any time and in any manner while I have the legal capacity to do so, **subject however, to my receipt of the written consent to said amendment or revocation of Attorney LAWRENCE F. PATTERSON, whose signature on said written consent form is Medallion Certified** (whether Attorney LAWRENCE F. PATTERSON is then acting as the Attorney at Law for either one or both of us, or has been discharged as said Attorney for either one or both of us, orally or in writing) **or, in the alternative, without [sic] the consent of a Court having jurisdiction, upon Petition filed by said attorney or by any other interested person.**"   (Emphasis in original.)

Each power of attorney and living will is signed by Charles or Charlotte Dunn, and each page containing the aforementioned provision is initialed by Charles or Charlotte Dunn.  According to Patterson, the "qualified amendment and revocation provision" is something that he routinely inserts in his clients' estate planning documents to prevent elder abuse.

On November 14, 2006, Patterson received a letter from

4

attorney Timothy J. McJoynt, informing Patterson that he had been retained by the Dunns to modify the estate plan that Patterson had previously drafted. McJoynt explained that the Dunns no longer wanted their ability to revoke or amend their estate planning documents to be contingent on Patterson's approval and, therefore, wished to remove his name from the documents and make other minor amendments.

Patterson responded by letter, stating it was necessary for the Dunns to personally meet with him to discuss this matter. Patterson's letter, in pertinent part, provided as follows:

"For my clients to make any changes in their plan it is necessary for both of them to discuss those changes with me and for me to then determine whether the changes are consistent with the interests and protections embodied in the original plan."

He continued by stating that if his clients are unwilling to meet with him, their only other alternative was to petition the court for leave to amend.

On April 27, 2007, the Dunns brought suit seeking a declaratory judgment against Patterson. The Dunns requested the court to declare, among other things, that they had an absolute right to revoke and amend the estate planning documents and that

5

Rule 1.2(a) of the Rules of Professional Conduct (134 Ill. 2d R. 1.2(a)) required Patterson to abide by their directions. Patterson was named as a defendant.

In Patterson's answer to the action, he admitted some basic factual allegations, but responded that he had no knowledge sufficient to form a belief as to the truth or falsity of a number of allegations in the plaintiffs' complaint, including that plaintiffs desired to revoke various estate planning documents and powers of attorney. In addition to his answer, Patterson filed an affirmative defense, alleging that the estate planning documents contained a clause prohibiting the plaintiffs from amending or revoking the documents without the written consent of Patterson, whether or not he has been discharged as the plaintiffs' attorney, or, alternatively, upon order of the court.

The answer also stated that Patterson met personally with the Dunns to review the final draft of all the documents in issue, including the amendment and revocation provisions. Exhibit No. 7 to the answer is a letter dated July 14, 2006, from Patterson to the plaintiffs enclosing the original executed estate plan documents. The letter states, in part, that the joint declaration of trust, powers of attorney for healthcare,

6

and living will are only "conditionally amendable or revocable in order to ensure that your express intentions will not be unwittingly changed if you enter into a deteriorating mental state which compromises your ability to fully understand the consequences of your decisions at that time."

Defendant alleges that he asked plaintiffs to personally confirm that he was terminated with respect to estate planning and trust funding. Exhibit No. 11 is the letter dated February 6, 2007, to the Dunns from Patterson requesting that they execute a formal notice of termination. No response was received from plaintiffs.

In another attempt to gauge whether he should consent to the change in the documents, Patterson served a notice of discovery deposition for Charles and Charlotte Dunn upon McJoynt and a notice to produce on the Dunns. When Patterson received no response to his discovery requests, he filed a motion for discovery sanctions pursuant to Supreme Court Rule 219 (210 Ill. 2d R. 219).

The plaintiffs filed a motion for judgment on the pleadings, alleging that no genuine issue of material fact existed in the cause. In their motion, the plaintiffs argued that the cause presented a straightforward issue of law: "is an attorney

7

obligated to follow the direction of his or her client, even if the attorney deems the clients' actions unwise, ill-conceived, or imprudent?"  Plaintiffs argued that pursuant to Rule 1.2(a) of the Rules of Professional Conduct, an attorney is obligated to abide by his client's decision so long as the direction given by the client is not contrary to law, unethical, or otherwise in violation of an ethical or legal obligation.  Because plaintiffs did not request that Patterson act in a way that was unethical, contrary to law, or otherwise improper, plaintiffs argued that judgment on the pleadings was proper.

In his response to the motion for judgment on the pleadings, Patterson argued that issues of fact existed as to whether the Dunns were and/or are the clients of attorney Timothy J. McJoynt. Patterson denied that "an attorney does not have the right to disregard a client's express wishes and instead substitute his or her own judgment and wisdom as to the client's personal affairs."

Patterson continued, citing text of Rules 1.14(a) and (b) of the Rules of Professional Conduct (134 Ill. 2d Rs.  1.14(a), (b)) to be in support of his position, due to his alleged belief that Charlotte Dunn may been impaired in her ability to make adequately considered decisions.  Thus, Patterson claimed to invoke his responsibility under Rule 1.14 to maintain a normal

8

lawyer-client relationship and take protective action because he reasonably believed that Charlotte could not adequately act in her own interest.

When the parties appeared for oral argument, Patterson again expressed that he had no evidence that McJoynt or attorney Frank Andreano represented plaintiffs. He stated that he needed further verification because the pleadings were unverified. McJoynt provided no verification other than the letter he sent, and the plaintiffs failed to respond to his letter requesting further verification or his request for discovery depositions.

The discovery sanctions motion was struck without prejudice because a Supreme Court Rule 201(k) (210 Ill. 2d R. 201(k)) conference had not been held. The court granted the plaintiffs' motion for judgment on the pleadings and held that the qualified revocation or amendment provision requiring Patterson's approval was contrary to public policy because it ignored the provisions of Supreme Court Rule of Professional Conduct 1.2.

The plaintiffs petitioned the court for assessment of fees under Illinois Supreme Court Rule 137. Plaintiffs argued that a reasonable attorney would not have adopted and forwarded the arguments presented by defendant in the instant case. Said motion was granted, and plaintiffs were awarded attorney fees and

9

costs in the amount of $5,393.75.  Patterson appeals.

ANALYSIS

I. Qualified Amendment and Revocation Provision

Patterson first argues that the trial court erred in granting judgment on the pleadings and finding the revocation and amendment provisions in the estate plan documents to be void as contrary to public policy.  He contends that the provisions requiring the consent of the attorney who prepared the documents, or, in the alternative, an order from the court are valid and proper means for the settlors to limit their own future ability to amend or revoke the trust documents.

The standard of review of a judgment on the pleadings is *de novo*.  *Gillen v. State Farm Mutual Automobile Insurance Co.*, 349 Ill. App. 3d 779, 782, 812 N.E.2d 595, 598 (2004).  Further, an appellate court reviews a trial court's construction of a trust instrument *de novo*.  *Peck v. Froehlich*, 367 Ill. App. 3d 225, 227-28, 853 N.E.2d 927, 931 (2006).

We note at the outset that the plaintiffs challenge Patterson's standing on review.  Plaintiffs do not dispute Patterson's standing to appeal the imposition of the Rule 137 sanctions.  However, plaintiffs assert that Patterson has no standing to appeal the trial court's holding that the amendment

10

and revocation provisions were void.

We find this contention to be inconsistent with the fact that plaintiffs named Patterson as the defendant in this suit and obtained a judgment against him.  For a party to have standing, the party must suffer some injury in fact to a legally cognizable interest and must have sustained, or be in danger of immediately sustaining, a direct injury.  *Department of Transportation v. Anderson*, 384 Ill. App. 3d 309, 313-14, 892 N.E.2d 116, 121 (2008).  The entry of a judgment itself constitutes legally cognizable damages.  *Schal Bovis, Inc. v. Casualty Insurance Co.*, 314 Ill. App. 3d 562, 568, 732 N.E.2d 1082, 1088 (1999).  Furthermore, at least at the outset, Patterson is identified as plaintiffs' fiduciary in the documents at issue.  Thus, Patterson has standing in this appeal to seek both reversal of the judgment and reversal of the imposition of sanctions.

Patterson first argues that the consent provisions in the estate planning documents were merely third-party consent provisions, which are completely legal in Illinois.  The Restatement (Third) of Trusts recognizes that consent by a third party to amendment or revocation is a proper and valid measure.  Section 63(1) provides, "the settlor of an inter vivos trust has power to revoke or modify the trust to the extent that the terms

11

of the trust \*\*\* so provide."  Restatement (Third) of Trusts §63(1) at 442 (2003), Comment *j* on section 63(3), entitled, "Power to Revoke or Modify with Another's Consent" states, "If the settlor reserves a power to revoke or modify the trust with the consent of [another], such as the trustee, [a beneficiary], or a third party, the power normally cannot be exercised without that consent."  Restatement (Third) of Trusts §63(3), Comment *j*, at 448 (2003).  The comment explains that a court may intervene if the person whose concurrence is required improperly withholds or grants the consent, such as where the person acts in bad faith or from an improper motive.  Restatement (Third) of Trusts §63 (2003).

Plaintiffs stipulate that such limitations are permissible and appropriate.  However, plaintiffs contend that such limitations are not permissible when the consent required is that of the drafting attorney, whether or not said attorney is still representing the parties.  This is so, say the plaintiffs, because that attorney's behavior is held to different standards than those that apply to a lay third party, that is, the Rules of Professional Conduct.

Plaintiffs argue that public policy requires lawyers. under Rule 1.2, to follow the direction of their clients, so long as

12

the client is not asking the attorney to do anything unethical or illegal. This is due to the fact that clients should be able to have confidence their lawyer will handle their important, and often very personal, legal matters pursuant to the clients' direction. Thus, plaintiffs contend that Patterson's position, as the plaintiffs' attorney, required him to provide independent professional judgment. Plaintiffs contend that an attorney's duty is to identify the person(s) who will act on behalf of elderly clients if they become disabled, and it is patently improper for an attorney to draft estate planning documents that places himself or herself in such a role. See *Sherman v. Klopfer*, 32 Ill. App. 3d 519, 336 N.E.2d 219 (1975) (attorney who drafted various documents for aunt breached attorney-client relationship by failing to give aunt sufficient control of the business so as to permit her to sell its assets and refusing to consent to sale of the business).

*Sherman,* however, can be distinguished from the case at bar in two important ways. In *Sherman*, the court found that the attorney failed to adequately inform his client of information necessary for her to understand her ownership interest in the business. Moreover, the attorney in *Sherman* was a partner with the client in the business and, therefore, stood to benefit from

13

the dealing.  *Sherman*, 32 Ill. App. 3d at 534-35.  In the instant case, there is no evidence that Patterson misled the plaintiffs in any way.  He testified that he informed them of the amendment and revocation clause and that they both signed and initialed next to the provision in the documents.  Additionally, there is no evidence that Patterson stood to personally benefit from refusing to consent to the amendment of the plaintiffs' estate planning documents.

Given that third-party consent is a recognized method of protecting settlors and principals from making changes based on mental incompetency or undue influence, Patterson argues that an attorney may appropriately serve as the third party who is to give such consent.  Patterson contends that such a designation is actually consistent with the broad fiduciary duties an attorney owes his or her client, and with the attorney-client relationship, which is based on duties of loyalty and trust.  We agree.

Out here in the cornfields of Illinois and, we suspect, sometimes in the large metropolitan areas of Illinois, one's lawyer is often his or her most trusted friend and advisor with respect to major life decisions.  Where, as here, the lawyer is given no financial stake in an estate by virtue of his capacity

14

as a fiduciary, we see no reason why the family lawyer cannot act in such capacity simply because he is drafting a trust document. Plaintiffs argue that a lawyer should not be able to limit how his clients spend their money or distribute their assets as long as it is not illegal. First of all, these documents do not give the fiduciary such broad powers. Secondly, every time a lawyer drafts an irrevocable trust for a client, he is limiting his client's future decisions regarding the distribution of his or her estate. However, this is done with the client's permission.

Patterson directs us to the single focus of the Rules of Professional Conduct: the client's best interests. Patterson argues that the amendment and revocation provisions are not inconsistent with the right of a client to discharge his or her attorney. He states that even assuming he was discharged as plaintiffs' attorney, his only role at that point was to then consider whether the trust documents and powers of attorney should be amended and to give or deny such consent on a good-faith basis. Thus, the ability of the plaintiffs to discharge Patterson as their attorney was not limited. Again, we agree.

The revocation provisions executed by the plaintiffs are not inconsistent with the duty of an attorney to follow his clients' instructions under Rule 1.2 of the Rules of Professional Conduct.

15

Patterson followed the explicit instructions of his clients as expressed by them in the estate planning documents. There is no allegation that the plaintiffs did not execute or comprehend the estate plan documents. Alternatively, if we assume Patterson was terminated as their attorney, he was not acting as their attorney when he declined to consent to the revocation of the trust and, therefore, did not violate his duty to follow his clients' wishes when he declined to consent.

Moreover, Patterson contends that he sought to meet with the plaintiffs before agreeing to grant or deny consent, but that through their new attorney, they refused to meet with him. Attorney McJoynt represented in his letter to Patterson that the plaintiffs were competent. However, a statement by a third party alone is not enough for Patterson, whether or not he was the plaintiffs' attorney, to fulfill his duties to act in their best interest before offering his consent. Thus, a meeting with the plaintiffs, at a minimum, was necessary so that Patterson could assess competency and any possible undue influence, in order to make a good-faith determination as to whether the amendment was in the best interest of the plaintiffs.

Furthermore, there is no evidence or even suggestion that Patterson personally benefitted from or had any financial

16

interest in the estate plan.  Patterson testified that he did not have any relationship with possible beneficiaries of the trust and, therefore, unlike a family member, had no reason to favor or disfavor certain changes based on who, other than the plaintiffs, may benefit from them.

In conclusion, we do not believe that the trust documents authored by Patterson violate public policy or the Rules of Professional Conduct.  The duty of a fiduciary is consistent with the role of attorney and counselor and represents its highest ideals.  Plaintiffs point out that Rule 1.2 requires lawyers to follow the directions of their clients, so long as the client is not asking the attorney to do anything unethical or illegal.  The trust documents required Patterson to use the utmost good faith in either granting or withholding consent to a change in the documents.  If he refused to consent, plaintiffs could seek authority for a change from a court.  In fact, plaintiffs could have gone directly to a court without ever seeking Patterson's consent.  If Patterson unreasonably withheld his consent to a change, there is an obvious remedy for that breach of fiduciary duty.  We know of no cases that would hold that the Rules of Professional Conduct require an attorney to follow self-destructive directions of an incompetent client.  Patterson

17

agreed to act as fiduciary for the plaintiffs and to try to ensure that as they aged, they did not unwittingly make detrimental changes to their trust documents.  At least at this stage, there is no reason to believe that he has done anything but keep that promise.  Through their new attorneys, plaintiffs have refused to even meet with Patterson.

We note that Patterson has put himself in a tough and expensive position here.  If he had agreed to the requested change without first reasonably ascertaining that the plaintiffs were competent to make the change and that they were not subject to undue influence, and had the plaintiffs then been duped out of their assets, Patterson might very well have been called to answer as to why he consented to the change without having ascertained the plaintiffs' competency and the absence of undue influence.  We routinely see cases in the court where people take advantage of the elderly, take them to see a lawyer of their choice with the end result being that the elderly person's assets are stolen by the one asserting undue influence.  The sad fact is that the elderly are particularly susceptible to being taken advantage of and, clearly, the provision in question was tailored to try to reduce that risk for the plaintiffs.  The documents provided that if the plaintiffs did not want to seek the consent

18

of Patterson, they could have asked the court to authorize the change.  However, the court did not take any evidence as to whether the change ought to be granted *vis-a-vis* the plaintiffs' welfare.  Rather, it simply held that the provision requiring Patterson's consent was against public policy, a violation of the Rules of Professional Conduct and therefore void.  For the reasons set forth above, we find that it is not void.  This ruling by the trial court is reversed and the matter is remanded for further proceedings.

## II. Sanctions

Patterson next argues that the Supreme Court Rule 137 sanctions award should be reversed.  A ruling on Rule 137 sanctions should not be overturned unless the trial court has abused its discretion.  *Dismuke v. Rand Cook Auto Sales, Inc.*, 378 Ill. App. 3d 214, 217, 882 N.E.2d 607, 610 (2007).

Supreme Court Rule 137 provides in part:

> "The signature of an attorney or party
> constitutes a certificate by him that he
> has read the pleading, motion or other
> paper; that to the best of his knowledge,
> information, and belief formed after
> reasonable inquiry it is well grounded in

19

> fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."  155 Ill. 2d R. 137.

The purpose of this rule is to prevent parties from abusing the judicial process with actions unsupported by fact or law, not to punish litigants and their attorneys merely because they were unsuccessful in the litigation.  *Dismuke v. Rand Cook Auto Sales, Inc.*, 378 Ill. App. 3d at 217.  In a determination of whether to impose sanctions, it is not sufficient that the party honestly believed his or her case was well grounded in fact or law.  *Whitmer v. Munson*, 335 Ill. App. 3d 501, 514, 781 N.E.2d 618, 628 (2002).  Rather, an objective standard is to be employed in evaluating what was reasonable under the circumstances.  *Baker v. Daniel S. Berger, Ltd.*, 323 Ill. App. 3d 956, 963, 753 N.E.2d 463, 469 (2001).

In the case at bar, Patterson argues that he declined to consent to the amendment in good faith, given that he had no

20

information regarding whether the proposed amendments were in the plaintiffs' best interest.  Further, Patterson states that he had no personal interest or ability to benefit from the estate.

Plaintiffs contend that Patterson's conduct simply did not comport with the actions of a reasonable and prudent attorney. At the outset, plaintiffs argue that it is oppressive and unreasonable to suggest that clients need to verify anything with their former attorney.  To suggest that an attorney needs to prove he or she "really" represents a client is ludicrous, and if every attorney took such a position the court system would grind to a halt.  Finally, plaintiffs argue that a reasonable and prudent attorney would not have opposed a request to consent to an amendment or fought this in the courtroom.  We disagree.

There was nothing unreasonable about Patterson's conduct in this case.  As explained above, we find that the qualified amendment and revocation clause at issue did not violate public policy.  Further, Patterson attempted to visit with the plaintiffs in order to determine whether there were any competence/undue influence issues involved.  A reasonable and prudent fiduciary, whether a lay person or attorney, would not consent to an amendment to these trust documents without first determining what was in the plaintiffs' best interest.  A letter

21

from an attorney alone is not sufficient evidence for a fiduciary to make a good-faith decision regarding competency and undue influence. To so hold would render meaningless any attempts to protect oneself from the possibility of future harm resulting from diminished mental faculties.

In plain English, it is undisputed that Patterson consulted with the plaintiffs regarding several estate planning documents. After consulting with Patterson, the plaintiffs recognized that with their advancing age, there was a probability of diminished mental faculties and therefore susceptibly to undue influence or unsound decisions. They were apparently happy with the documents when they were written and on advice of counsel agreed to provisions which indicated that before they changed the documents, they had to seek the consent of either: (a) their fiduciary (Patterson); or (b) a court of competent jurisdiction. Patterson agreed to act as the fiduciary and, in so doing, he promised to use the utmost good faith with respect to granting or withholding such consent. This is clearly implicit in the documents. We see nothing in Patterson's conduct other than an attempt by a lawyer, at no small expense to himself, to keep a promise he made to either his clients or former clients. We in no way mean or intend to impugn the integrity of plaintiffs' new

22

attorneys.  However, that being said, it was not unreasonable for Patterson to withhold his consent when the only thing he had was a lawyer's letter stating the plaintiffs want to make this change.  Every attempt Patterson made to consult with the plaintiffs personally was thwarted.  We do not find Patterson's conduct sanctionable.  Rather, we find it admirable and consistent with the highest ideals of the bar.  In light of the obvious expense to Patterson, we will leave it to other estate planners whether they wish to use this particular method of estate planning.

For the reasons set forth above, we find that the trial court abused its discretion in awarding sanctions against Patterson.  That award of sanctions is reversed.

CONCLUSION

For the foregoing reasons the judgment of the circuit court of Will County is reversed and this matter is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

O'BRIEN, P.J., and CARTER, J., concur.

23