SECOND DIVISION
March 15, 2011

No. 1-09-1986

| | | |
|---|---|---|
| JODI ANN SCHNEIDER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 06 CH 6157 |
| | ) | |
| EARL M. SCHNEIDER, | ) | Honorable |
| | ) | Barbara Riley, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Cunningham and Justice Connors concurred in the judgment.

OPINION

This appeal concerns a single issue: whether the trial court erred in granting sanctions against the appellant, Earl Schneider. Earl and Jodi Schneider were married in a Jewish ceremony in 1985 and received a civil dissolution of their marriage in 2002. However, the two remained married in the eyes of Orthodox Jewish law because Earl would not give Jodi a get[1] which would release her from their Jewish marriage and allow her to marry another Jew. After pursuing nonlegal remedies, Jodi filed an action against Earl on March 28, 2006, seeking

---

[1]A get is a divorce document, which according to Jewish Law, must be presented by a husband to his wife to effect their divorce. The essential text of the get is quite short: "You are hereby permitted to all men," *i.e.*, the wife is no longer a married woman, and the laws of adultery no longer apply. The get also returns to the wife the legal rights which a husband holds in regard to his wife in a Jewish marriage.

specific performance of a ketubah, or Jewish marriage contract, that the two had signed at their wedding and which she argued compelled Earl to grant her a get in the event their marriage ended. The parties filed numerous pleadings and motions before the trial court and, in nearly every filing, Earl repeated the same arguments about the inapplicability of *In re Marriage of Goldman*, 196 Ill. App. 3d 785 (1990), a case upon which Jodi relied. The trial court granted summary judgment in favor of Jodi on September 19, 2008, and that judgment included an award for attorney fees and costs, after which Jodi filed a petition for fees pursuant to Illinois Supreme Court Rule 137 (eff. Feb 1, 1994). Earl then proceeded to file objections to Jodi's petition and subsequent amendments, all of which repeated his earlier failed arguments about the inapplicability of *Goldman*. The trial court specifically granted Jodi attorney fees as a sanction pursuant to Rule 137 on June 3, 2009. Earl filed a motion to reconsider, in which he again repeated his *Goldman* argument and which the trial court denied on July 13, 2009. He then filed the instant appeal, arguing that the trial court erred in granting Rule 137 sanctions. For the following reasons, we find that the trial court did not abuse its discretion in awarding Jodi attorney fees as a sanction pursuant to Rule 137.

## JURISDICTION

The trial court entered a final judgment in the instant case on July 13, 2009, and respondent filed his notice of appeal on July 28, 2009. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

BACKGROUND

On March 28, 2006, plaintiff Jodi Ann Schneider sued her ex-husband, Earl Schneider, for specific performance in the chancery division of the circuit court of Cook County, alleging that Earl had a contractual obligation to give her a "get." Jodi and Earl had married on August 25, 1985, and signed a ketubah, or Jewish marriage contract, as part of their wedding ceremony. Jodi attached a copy of the ketubah to her complaint. The ketubah consists of a two-page document, one page written in Aramaic and the other an English translation. The ketubah provides, in pertinent part, as follows:

"The said Bridegroom made the following declaration to his bride:

Be thou my wife according to the law of Moses and Israel. I faithfully promise that I will be a true husband unto thee; I will honor and cherish thee; I will work for thee; I will protect and support thee and will provide all that is necessary for thy due sustenance as it beseemeth a Jewish husband to do. I also take upon myself all such further obligations for thy maintenance, as are prescribed by our religious statute.

And the said Bride has plighted her troth unto him in affection and sincerity and has thus taken upon herself the fulfillment of all the duties incumbent on a Jewish wife.

The covenant of marriage was duly executed and

witnessed this day, according to the usage of Israel."

Earl filed to dissolve the marriage under Illinois law on September 15, 2000, and the circuit court of Lake County entered a judgment for dissolution of marriage on March 4, 2002. Although Jodi and Earl were divorced in the eyes of the State of Illinois, they remained married under Orthodox Jewish law. In this tradition, only a husband can divorce his wife and he does so by petitioning a rabbinical court (Beit Din) to issue the get, which the wife must then physically accept in order for the divorce to be complete. If a husband refuses to give his wife a get, the wife becomes known as "agunah," or "chained." If an agunah were to marry again, this second marriage would not be recognized under Jewish law and tradition and the wife would be seen as adulterous. Any children of the second marriage would be considered "mamzerim," or illegitimate.

In her complaint, Jodi alleged that Earl was engaged to and cohabitating with another woman and refused to give Jodi a get in order to harass her and deny her the right to be remarried under Jewish law. She further alleged that, pursuant to *In re Marriage of Goldman*, 196 Ill. App. 3d 785 (1990), the ketubah that she and Earl had signed during their marriage ceremony formed a binding contract that required Earl to give her a get in the event that their civil marriage was dissolved. Jodi finally alleged that her only recourse against Earl was the filing of a suit for specific performance and asked that the court order Earl to give her a get and that the court order Earl to pay Jodi's attorney fees and costs in the specific performance action.

On April 27, 2006, Earl filed a motion to dismiss Jodi's complaint pursuant to section 2-615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-615 (West 2006)). In his motion, Earl alleged that the language of the ketubah did not require Earl to give Jodi a get. In addition, Earl alleged that the trial court lacked jurisdiction over the action because of the separation of church and state. Earl also acknowledged that the *Goldman* decision involved the same ketubah language as the instant case but argued that the decision was distinguishable because of the following factual differences: (1) the wife in *Goldman* had included a count for specific performance in her divorce petition; (2) in *Goldman,* the ketubah issue arose prior to the entry of a judgment of dissolution of divorce; and (3) an evidentiary hearing was held in *Goldman*, in which rabbis testified that because the husband was using his refusal to give a get as a means of extorting concessions from his wife and because the husband had abandoned his wife, the get did not need to be voluntarily given. Earl's motion to dismiss did not include any citations to authority.

On July 12, 2006, the presiding judge of the chancery division transferred the instant case to the domestic relations division of the circuit court of Cook County. On February 28, 2008, Jodi submitted interrogatories to Earl. Earl never responded.

On May 5, 2008, the trial court ordered Earl to give Jodi a get. The court's handwritten order provided as follows:

> "This cause coming on before this Court on Petition of the
>
> Petitioner 'Complaint for Specific Performance,' and being set for

hearing this day on Petitioner's Petition; and the court being advised that the Petitioner's attorney has received a motion to substitute attorney and motion to [illegible] and dismiss set for 5/15/08, but not appearing on the Judge's Book, and no one appearing for the Respondent, and the Court being advised and being presented all papers tendered to the Petitioner's attorney and being further advised,

IT IS HEREBY ORDERED:

1. That the Petitioner's Petition for Specific Performance is granted.

2. The Respondent is hereby ordered to sign a form which grants the Petitioner a Jewish Divorce, and allows a Rabbi to stand in his place at the proceeding.

3. The Respondent shall sign the form instanter, upon presentation to him.

4. No cost for the 'get' will be [illegible] against the Respondent and the Petitioner shall pay the fees association with the preparation of the get.

5. This matter is taken off call."

On that same day, the trial court entered a second handwritten order vacating its earlier

order granting specific performance. This second order noted that Jodi's attorney saw Earl's attorney in the courthouse hallway and advised him that the matter was set for a hearing but that no one had appeared on Earl's behalf.

On May 8, 2008, Jodi filed a motion to disqualify Stanley Kaplan, Earl's brother-in-law, as Earl's attorney. In her motion, Jodi alleged that Kaplan had been suspended from the practice of law several times in the past few years and had engaged in improper financial dealings with Earl during that same period of time.

On May 23, 2008, Earl filed a motion for substitution of judge pursuant to section 2-1001(a) of the Code (735 ILCS 5/2-1001(a) (West 2006)). The trial court denied Earl's motion on August 28, 2008. The court's August 28, 2008, order also stated that Jodi withdrew, without prejudice, her motion to disqualify Stanley Kaplan as Earl's attorney.

Earl had also filed a motion to amend his motion to dismiss and on September 4, 2008, the trial court granted Earl's motion. In his amended motion, Earl reiterated the same arguments about the inapplicability of this court's decision in *Goldman* that he raised in his first motion.

On September 19, 2008, Jodi filed a motion *in limine* seeking to preclude Earl from testifying or presenting evidence on his behalf at a trial in the instant case. In her motion, Jodi argued that because Earl had failed to respond to Jodi's February 28, 2008, request for interrogatories, despite Jodi's September 3, 2008, notice to comply with discovery and request for compliance pursuant to Illinois Supreme Court Rule 201K (eff. Jan. 1, 1996), Earl should be precluded from presenting testimony or evidence at trial. Jodi further argued that Jodi would

suffer unfair prejudice if Earl were allowed to testify or present evidence without complying with Jodi's repeated requests for discovery.

That same day, the trial court entered an order denying Earl's amended motion to dismiss and granting Jodi's motion for summary judgment. The order further directed Earl to secure the get. The court specifically ordered Earl to sign a form, which authorized a rabbi to stand in Earl's place while Jodi petitioned a rabbinical court to give her a get, in the court's presence and Earl refused to do so. Finally, the court awarded Jodi attorney fees and directed her to prepare a petition for such fees.

Jodi filed her petition for attorney fees on October 3, 2008. On November 3, 2008, Earl filed a motion to strike and dismiss Jodi's petition for attorney fees. In his motion, Earl alleged that the trial court described Earl's conduct in the case as "lousy" during a hearing on September 19, 2008, and that this was not a basis for awarding attorney fees and costs. Earl further alleged that the trial court lacked authority to award Jodi attorney fees. Jodi filed an amended petition for attorney fees on November 10, 2008.

On November 18, 2008, the trial court granted Jodi leave to amend her petition for fees and allowed Earl 28 days to respond. Earl filed a motion to strike and dismiss Jodi's amended petition on December 17, 2008. In his motion, Earl alleged that the court lacked jurisdiction to award fees and that, in the alternative, the matter was barred by the doctrine of *res judicata*. Earl also reiterated his earlier arguments about the inapplicability of *Goldman*.

Meanwhile, on December 3, 2008, Earl secured a get for Jodi.

On February 5, 2009, Jodi filed a memorandum of law discussing the applicability of sanctions under Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994). Later that month, on February 18, 2009, Earl filed a motion to amend his December 2008 motion to dismiss. In his motion to amend, Earl argued that Jodi's claims were time-barred. On February 24, 2009, Jodi filed a petition to amend or supplement her pleadings, seeking to update her billing statement filed with the court detailing attorney fees and costs incurred in the instant case.

On March 16, 2009, Earl filed an amended and supplemental motion to strike and dismiss Jodi's petition for attorney fees. In his amended and supplemental motion, Earl reiterated the arguments that he had raised earlier. Namely, Earl alleged that the trial court lacked jurisdiction over the case and reiterated that the *Goldman* decision was distinguishable from the case at bar.

On March 24, 2009, Jodi filed a second petition to amend or supplement her pleadings. In this second petition, Jodi provided the court with an updated billing statement of all attorney fees and costs incurred in the instant case to date.

On March 25, 2009, Earl filed a reply to Jodi's claim for sanctions pursuant to Rule 137. Earl's reply contains the same arguments that he made in each of his earlier filings with the trial court. Specifically, Earl argued that the court lacked jurisdiction and that the *Goldman* case was inapplicable.

The trial court denied Earl's motion to strike and dismiss Jodi's amended fee petition on March 30, 2008, and set the matter for a hearing on June 3, 2009. On May 22, 2009, Jodi filed a third petition to amend or supplement her pleadings, updating the billing statements of all

No. 1-09-1986

attorney fees and costs incurred to date.

On June 3, 2009, the trial court held a hearing on Jodi's petition for attorney fees pursuant to Rule 137. After hearing argument from both sides, the trial court stated as follows:

"I do find that this entire action from the very beginning was sanctionable. The only purpose I can imagine is to harass and cause distress. That's the only reason I can imagine. I think I've been pretty clear about this right along. Isn't this the case where I said that the only word that would describe this was 'lousy'?"

The trial court also entered the following handwritten order:

"This [illegible] coming on before This Court for determination of fees due the Petitioner, Jodi Schneider, and the court having heard argument, and being so advised,

IT IS HEREBY ORDERED

1. That this Court finds that the entire proceeding is sanctionable and the Respondent's actions were done solely to harass and cause distress to the Petitioner.

2. The Court having determined that sanctions under 137 are appropriate and warranted, the court enters judgment against Earl M. Schneider in the amount of $54,516.22, pursuant to [illegible] 137."

10

On June 18, 2009, Earl filed a motion to stay the enforcement of the trial court's June 3, 2009, order. In this motion, Earl alleged that the amount of the judgment against him should be reduced because an unnamed portion of the fees awarded as sanctions were discharged as pre-petition debts in Earl's chapter 7 bankruptcy case. Attorney Ariel Weissberg filed this motion on behalf of Earl; however, the record contains no indication that Weissberg filed notice of appearance before the trial court.

On June 22, 2009, Jodi filed a petition for interim attorney fees and costs. In her petition, Jodi asserted that she had limited means to respond to Earl's latest motion and requested that the court grant her an interim award of $10,000 "to level the playing field and to enable the Petitioner to present a creditable defense to the Respondent's pleadings."

On June 26, 2009, Earl filed a motion to reconsider and vacate the trial court's June 3, 2009, order. Earl attached a report of proceedings from a September 19, 2008, hearing before Judge Riley. At the hearing, the trial court asked Earl's attorney why Earl would not sign a form allowing Jodi to pursue a get. Earl's counsel offered no answer to the court's question. After hearing arguments from both sides, the trial court ruled as follows:

"THE COURT: I don't believe this is res adjudicata [*sic*]

and I don't think it's a 1401 motion either. The motion for

summary judgment and judgment on the pleadings is granted.

MR. MORRIS [Counsel for Jodi]: Thank you, your Honor.

I would ask then that since Dr. Schneider is standing here,

he sign these papers now so we don't have to chase this man. Will the Court direct it right now?

MR. KAPLAN [Counsel for Earl]: If the Court please, he has a right not to. We have a right to have further proceedings, not necessarily before this Court.

THE COURT: Sign.

MR. KAPLAN: Pardon me?

THE COURT: I'm ordering him to sign it.

MR. MORRIS: Here it is. Sign.

MR. KAPLAN: He's not going to sign it, Judge. He has a right not to sign it and he has a right also to appeal this decision.

THE COURT: Then he can take it back after he signs it.

MR. KAPLAN: No, he can't. No, he can't take it back, Judge, because if she goes and proceeds and gets the Get, then the appeal is moot.

MR. MORRIS: Then how is his client harmed?

THE COURT: It's a question of lousy. Put that in the record, lousy, lousy, lousy behavior, which I see all day long, but this is a good example of it.

As to fees, fees are granted except for the cost of

originally filing the pleading."

On July 10, 2009, Earl filed a reply to Jodi's answer to his motion to reconsider and vacate the order of June 3, 2009. In his reply, Earl repeated his argument that *Goldman* is distinguishable and inapplicable to the case at bar.

The trial court denied Earl's motion to reconsider on July 13, 2009, after hearing oral argument on the matter. Earl then filed this timely appeal.

ANALYSIS

Earl's main brief on appeal did not contain a statement of jurisdiction as required by Illinois Supreme Court Rule 341(h)(4) (eff. July 1, 2008). His brief also did not include an appendix as required by Illinois Supreme Court Rule 342 (eff. Jan. 1, 2005). This court *sua sponte* issued an order directing Earl to file an amended brief that complied with the Illinois supreme court rules. Earl filed an amended brief, with appendix, and we will proceed to consider Earl's arguments on appeal.

On appeal, Earl argues that the trial court's assessment of sanctions under Rule 137 was improper. Specifically, Earl argues that the trial court improperly imposed sanctions because of Earl's refusal to grant Jodi a get, *i.e.*, on the basis of his actions not his pleadings. In addition, Earl argues that some portion of Jodi's attorney fees were discharged in his chapter 7 bankruptcy case.

We will not overturn a trial court's ruling on Rule 137 sanctions absent an abuse of discretion. *Dunn v. Patterson*, 395 Ill. App. 3d 914, 923 (2009). Rule 137 provides in pertinent

13

No. 1-09-1986

part as follows:

> "The signature of an attorney or party constitutes a certificate by
> him that he has read the pleading, motion or other paper; that to the
> best of his knowledge, information, and belief formed after
> reasonable inquiry it is well grounded in fact and is warranted by
> existing law or a good-faith argument for the extension,
> modification, or reversal of existing law, and that it is not
> interposed for any improper purpose, such as to harass or to cause
> unnecessary delay or needless increase in the cost of litigation. ***
> If a pleading, motion, or other paper is signed in violation of this
> rule, the court, upon motion or upon its own initiative, may impose
> upon the person who signed it, a represented party, or both, an
> appropriate sanction, which may include an order to pay to the
> other party or parties the amount of reasonable expenses incurred
> because of the filing of the pleading, motion or other paper,
> including a reasonable attorney fee." Ill. S. Ct. R. 137 (eff. Feb. 1,
> 1994).

Rule 137 is not a means by which trial courts should punish litigants whose arguments do not succeed; instead, it is a tool which they can employ to prevent future abuse of the judicial process or discipline in the case of past abuses. *Dunn*, 395 Ill. App. 3d at 923-24. A party's

14

honest belief that his case was well grounded in law and fact is not enough to avoid Rule 137 sanctions. *Id.* at 924. Rather, the party's pleadings must meet an objective standard of reasonableness. *Id.*

In the instant case, Earl repeatedly argued that this court's decision in *In re Marriage of Goldman*, 196 Ill. App. 3d 785 (1990), upon which Jodi relied, was inapplicable and distinguishable on its facts. By our count, Earl raised this same argument in six different pleadings beginning with his initial motion to dismiss Jodi's complaint and ending with his reply to Jodi's answer to his motion to reconsider and vacate the order of June 3, 2009. In each of these pleadings, Earl used similar language and argument with minimal if any citation to case law. And each time, Jodi filed the appropriate responsive pleadings. Even though the trial court denied Earl's motion to dismiss based upon his reading of *Goldman*, Earl continued to raise this argument as a defense to each and every action that Jodi and the trial court took in an attempt to bring the case at bar to resolution. Although not relevant to the issue of Rule 137 sanctions, which deal only with pleadings, motions, and other papers filed with the trial court, Earl's counsel repeatedly raised the same *Goldman* arguments at oral argument before the trial court.

Because Earl again raises his *Goldman* arguments on appeal, here in the context of attempting to demonstrate that his pleadings were reasonably based in the law and fact, we examine the *Goldman* decision and its applicability to the case at bar. In *Goldman*, the husband and wife had signed a ketubah as part of their marriage ceremony and, in her petition for divorce, the wife included a count for specific performance requesting that the husband grant her a get.

15

*Goldman*, 196 Ill. App. 3d at 787-88. The ketubah at issue in *Goldman* bore essentially the same wording as the ketubah in the instant case. *Id.* The trial court held an evidentiary hearing on the issue of whether the ketubah was an enforceable contract and determined the ketubah was enforceable and required a husband to give his wife a get upon termination of the marriage. *Id.* at 788-91. In a written order, the trial court dissolved the parties' marriage and ordered the husband to give his wife a get. *Id.* at 791. The order specifically provided that the trial court was not ordering a Beit Din to grant the get; instead, it merely required the husband "to truthfully answer all questions put to him and 'to participate in the verbal and physical acts necessary to validate the GET.' " *Id.*

The husband in *Goldman* appealed, arguing that the ketubah was not a contract; that even if it was a contract, it was too vague to support specific performance; and that the order directing him to secure the get violated his constitutional rights. *Id.* On appeal, this court determined that the manifest weight of the evidence presented to the trial court established that the parties intended the ketubah to be a binding contract and that their marriage would be governed by Jewish law. *Id.* at 792. In addition, "The uncontroverted expert testimony presented at trial established that Orthodox Jewish law requires the husband to obtain and deliver to his wife an Orthodox get upon dissolution of the marriage." *Id.* at 793. Even though generally a husband must give his wife a get voluntarily, the evidence presented to the trial court established that a certain amount of coercion was acceptable where the husband had abandoned his wife and refused to cohabit or support her as he had promised under the terms of the ketubah. *Id.*

16

This court also determined that the trial court's order directing the husband to secure a get did not violate the husband's constitutional rights. *Id.* at 794. First, "the order ha[d] [a] secular purpose of enforcing a contract between the parties." *Id.* Second, the main purpose of the order was secular and the trial court did not intend the order to advance or inhibit religion. *Id.* And third, by applying principles of contract law to the dispute between the parties, the trial court avoided excessive entanglement with religion. *Id.* at 795. Finally, because "[e]xpert testimony established that the get procedure was secular in nature and did not require [the husband] to engage in any act of worship or to express any religious belief," this court found that the trial court's order did not violate the husband's rights under the free exercise clause.

In the instant case, Earl repeatedly stressed that the *Goldman* case was distinguishable on its facts and that any court order directing him to secure a get would violate his constitutional rights. We address Earl's constitutional argument first. Earl never provided any citation to case law or the constitutional provisions upon which he relied in support of this argument. In addition, for the reasons stated in *Goldman*, we do not believe that an order directing Earl to sign a form authorizing a rabbi to stand in his stead at a proceeding where Jodi would petition for a get violates Earl's constitutional rights.

Earl's arguments that *Goldman* is distinguishable on its facts are without merit. Earl highlighted the following factual differences in his pleadings: (1) the wife in *Goldman* had included a count for specific performance in her divorce petition; (2) in *Goldman,* the ketubah issue arose prior to the entry of a judgment of dissolution of divorce; and (3) an evidentiary

17

hearing was held in *Goldman*, in which rabbis testified that because the husband was using his refusal to give a get as a means of extorting concessions from his wife and because the husband had abandoned his wife, the get did not need to be voluntarily given. The first two differences are *de minimis*. In the instant case, Earl filed the petition for divorce, and thus we cannot expect Jodi to have sought specific performance in that proceeding. Indeed, because it was Earl who filed the petition, it would have been reasonable for Jodi to assume that Earl would seek to dissolve the marriage under both Illinois civil law and Orthodox Jewish law.

The lack of an evidentiary hearing under different circumstances might provide a basis for distinguishing this court's decision from *Goldman*. However, the facts in this case make that argument unpersuasive here. The blame for lack of an evidentiary hearing can be placed solely upon Earl's failure to respond and act in accordance with court rule. Jodi filed a request for interrogatories in February 2008, seeking answers to questions such as those addressed in *Goldman*, namely, Earl's intent in signing the ketubah, Earl's intent that Orthodox Jewish law govern the marriage contract, and Earl's current marital status, to name a few. Earl never responded to Jodi's request for interrogatories, despite Jodi's September 3, 2008, notice to comply with discovery and request for compliance. The trial court ultimately granted Jodi's motion in limine seeking to bar Earl from presenting testimony or other evidence at trial on these issues because he failed to comply with discovery. Earl did not file a motion to reconsider or vacate that order. No posttrial motion was presented to the trial court to vacate that order. Thus, in the interest of fairness, we cannot find that *Goldman* is distinguishable merely because the

trial court here entered judgment based on the pleadings and did not conduct an unnecessary evidentiary hearing .

Even after the trial court issued its September 19, 2008, order directing Earl to sign a form allowing Jodi to pursue a get, Earl continued to press his arguments that *Goldman* did not apply. Once the trial court had determined the issue of specific performance, Earl employed his *Goldman* argument as a defense to the trial court's order granting Jodi attorney fees. Everytime Jodi presented the court with a petition for fees, Earl would file a responsive pleading raising the same *Goldman* argument. Jodi would then respond and file a supplemental petition updating her request for fees to include attorney fees and costs incurred in responding to Earl's latest pleading, and Earl would file another response raising the same *Goldman* argument. This cycle continued for several months until the trial court finally denied Earl's motion to reconsider on July 13, 2009.

Because Earl raised the same baseless argument repeatedly in response to Jodi's every filing, even after the trial court's judgment on the merits, we can see no reason for these pleadings except "to harass or to cause unnecessary delay or needless increase in the cost of litigation." Ill. S. Ct. R. 137 (eff. Feb. 1, 1994). Accordingly, we find that the trial court did not abuse its discretion in granting Rule 137 sanctions against Earl. *Dunn*, 395 Ill. App. 3d at 923.

Earl argues on appeal that the trial court's order granting sanctions was based not on his pleadings but on his conduct before the court. In support of this argument, Earl points to the September 19, 2008, hearing where the trial court called his conduct "lousy." At the June 3,

No. 1-09-1986

2009, hearing to determine the appropriateness of Rule 137 sanctions, the trial court stated:

> "I do find that this entire action from the very beginning was
> sanctionable. The only purpose I can imagine is to harass and
> cause distress. That's the only reason I can imagine. I think I've
> been pretty clear about this right along. Isn't this the case where I
> said that the only word that would describe this was 'lousy'?"

We agree that it would be an abuse of discretion for a trial court to award Rule 137 sanctions based upon a party's conduct before the court. *Krautsack v. Anderson*, 223 Ill. 2d 541, 562 (2006) ("Because Rule 137 addresses the pleadings, motions and other papers a litigant files, the rule does not provide a sanction against all asserted instances of bad-faith conduct by a litigant or the litigant's attorney during the course of litigation."); *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 16 (2009) (failure to appear before the court is not an appropriate basis for granting Rule 137 sanctions). While it would likely have avoided some confusion had the trial court detailed which pleadings were filed to harass and cause distress, as discussed above, the record supports the trial court's finding that Rule 137 sanctions were appropriate. When the trial court denied Earl's motion to dismiss and again when the court granted summary judgment in favor of Jodi, the trial court found that Earl's *Goldman* arguments lacked merit. Nevertheless, Earl continued to file pleadings repeating this same argument numerous times in response to every pleading that Jodi filed. Such filings constitute the sort of harassing pleadings that Rule 137 was intended to prevent. If Earl

20

reasonably believed that the trial court erred in rejecting his *Goldman* arguments, he should have appealed those decisions.

Earl also argues that some of his fees were discharged in his chapter 7 bankruptcy case. Specifically, Earl asserts that the trial court should have deducted the sum of $4,404.17 from its June 3, 2009, award of attorney fees pursuant to Rule 137. In support of this argument, Earl points to several filings in his bankruptcy case, which he states are attached to his brief. No such documents were included in Earl's amended brief or in the appendix he filed in response to this court's request. Nor was any of this evidence included in the record presented before the trial court. In addition, Earl offers this court no accounting explaining how he arrived at the sum of $4,404.17. Accordingly, we decline to consider this purported evidence and argument on appeal. *Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196, 208 (2008) (declining to consider evidence on appeal that was not part of the record before the trial court).

Accordingly, the trial court did not abuse its discretion in granting Rule 137 sanctions against Earl. *Dunn*, 395 Ill. App. 3d at 923.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.