2019 IL App (1st) 182576-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

SECOND DIVISION
November 5, 2019

No. 1-18-2576

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF FABIA STAFFORD-COSBY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County |
| | ) | |
| and | ) | No. 16-D-430443 |
| | ) | |
| THEOPHILIUS O. ILEVBARE, | ) | The Honorable |
| | ) | Mary Colleen Roberts, |
| Respondent-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*: Trial court's orders allocating parenting time and decision-making responsibilities for the parties' minor child, allocating income tax exemption for dependent child, denying a motion to enforce payment of certain medical bills by the petitioner, and awarding attorney fees to petitioner are affirmed.

¶ 2    This appeal arises from the dissolution of the marriage of the petitioner, Fabia Stafford-Cosby, and the respondent, Theophilius O. Ilevbare. The respondent has filed this *pro se* appeal, challenging various rulings of the trial court at trial and in multiple posttrial motions concerning the allocation of parenting time and decision-making responsibilities for the parties' minor child,

the allocation of the income tax exemption for the dependent child, the payment of the child's medical bills by the petitioner, and an award of attorney fees in favor of the petitioner. For the reasons that follow, we affirm the judgment of the trial court.

¶ 3                                    I. BACKGROUND

¶ 4                          A. Pre-Trial Pleadings and Motions

¶ 5        On August 8, 2016, the petitioner filed a petition for dissolution of marriage against the respondent. No action was taken in the matter as of March 2017, when a child, L.O.A.I., was born to the parties. On January 22, 2018, an agreed order was entered allocating parenting time to the respondent for three hours every other Saturday and every Sunday. On March 22, 2018, the parties entered into a partial parenting plan agreement, which provided in pertinent part that both parents shall share in the responsibility of making final decisions for the child in the areas of education, healthcare, religion, and extracurricular activities. It also provided that both parents shall have equal access to the child's records and service providers, including in school and medical matters. Finally, it provided that prior to making a major or significant decision involving the child, the parties agreed to inform one another in a timely manner of any decisions that needed to be made, communicate with each other about the decision, and come to a mutually agreed-upon resolution. This agreement was later incorporated into the parties' judgment for dissolution of marriage.

¶ 6        On May 7, 2018, an agreed order was entered setting the matter for trial on July 16, 2018. That agreed order also stated, "Neither party shall make any major decision, medical, unless an emergency, prior to the trial date." On May 8, 2018, the respondent filed an emergency motion for sole legal custody of the child. The motion alleged generally that the petitioner was insufficiently attentive to the child's need for a revision of his circumcision, as recommended by

his doctors, and that she was uncooperative with the respondent in making shared medical decisions on behalf of the child. The motion further requested the above-quoted language be stricken from the agreed order of May 7, 2018, because it was not in the best interests of the child. Upon presentment, the emergency motion was entered and continued to the trial date.

¶ 7                            B. Trial and Judgment for Dissolution of Marriage

¶ 8         At the trial on July 16, 2018, the only contested issue was the allocation of parental responsibilities. On that issue, the petitioner testified that the child had resided with her since he was born and that the respondent had parenting time for three hours every other Saturday and every Sunday. She testified that she was at that point looking to put the child into a daycare, and that she and the respondent would agree upon the best daycare for the child and share the cost equally. She testified that, prior to that time, her mother had been caring for the child when she was at work. She testified she would usually wake the child between 6:00 a.m. and 7:00 a.m. to take him to her mother's house and then pick him up after work at 6:00 p.m. She testified that she worked for the Village of Bellwood and did water billing, and she worked Mondays through Fridays. She testified that she believed it was in the child's best interests to remain with her. She testified that she did not believe that the respondent properly fed the child during his parenting time. She testified that her concern was that the respondent was not feeding him solid food now that he was old enough to receive that. She testified that she was afraid that if respondent had parenting time more than every other Saturday and every Sunday, the child's nutritional needs would not be met. However, she testified that for the most part, the child appeared to be well cared for while he was in the respondent's care.

¶ 9         The respondent testified at trial that he would ensure that the child was given nutritionally-balanced meals during his parenting time. He agreed to communicate with the petitioner about

what he was feeding the child. He testified that he had a new work schedule, in which he worked nights. He testified that he was off work all day on Thursdays, Fridays, and Saturdays, and he then worked on Sundays, Mondays, Tuesdays, and Wednesdays. He testified that he wanted to have the child on Thursdays, Fridays, and Saturdays every week, and he could care for the child then. He also testified that he was capable of picking the child up and dropping the child off.

¶ 10     The trial court allowed the respondent to make additional argument concerning custody and parenting time. The respondent then stated that he had been involved in the child's life from birth. He argued that the petitioner had never been the primary custodian of the child, because of her long work hours on weekdays and Saturdays, during which time her mother cared for the child. The respondent argued that he lived close to both the petitioner and her mother, and that put him in a good position to be quite involved with parenting time. He argued that in his new job, he had the opportunity to work from home. He argued that within the next few weeks, he was going to be working only three days a week, which would give him four days during the week to spend with the child. He argued that he could be the primary caregiver, and the child would not need to be in daycare. He argued that his flexible work schedule put him in a good position to at least share equal parenting time with the petitioner. Finally, he argued that he did not believe that the neighborhood in which the petitioner lived was a good one in which to raise a child, and he lived in a better neighborhood.

¶ 11     Before ruling, the trial court referred to the parties' ability to claim of the child as a dependent for income tax purposes, stating, "And then the taxes every other year. You got that?" Both the respondent and the petitioner's attorney answered in the affirmative. The trial court asked if there were any other issues. The only other issue raised was the respondent's request for the trial court to caution the petitioner "regarding this police harassment." The trial court refused

to do so, on the basis that there was no pleading before it seeking such relief. The respondent did not request a ruling on his emergency motion or raise any issue of the child's circumcision.

¶ 12　　　After hearing the parties' testimony and argument, the trial court ordered that the parties would have joint-decision making for the child according to the terms of their previous agreement. It ordered that physical custody would remain with the petitioner, and it allocated parenting time to the respondent every Thursday and Friday from 8:15 a.m. to 6:30 p.m. and every Saturday from 8:15 a.m. to noon. The trial court's judgment for dissolution of marriage incorporated the parties' partial parenting plan agreement and provided that the parties would continue to be bound by its terms. Pertinent to this appeal, it also ordered that the parties shall be allowed to claim the child as a dependent on income taxes in alternating years, "with petitioner claiming the minor child during even tax years and respondent claiming the child during odd tax years." It ordered that the parties would be equally responsible for all medical costs of the minor not covered by health insurance and all daycare expenses of the child.

¶ 13　　　　　　　　　C. Motions heard on October 11, 2018

¶ 14　　　In the months following the trial, the parties filed four motions that were ultimately set for hearing on October 11, 2018. The content of these motions that is pertinent to this appeal will be set forth in greater detail in the analysis below. The first motion was the respondent's motion to set aside the judgment for dissolution of marriage and for a new trial. Among its arguments, it alleged that the petitioner's attorney had engaged in various misrepresentations in the drafting of the judgment order, including an alleged agreement that the respondent would be the one to claim the child as a dependent for purposes of 2018 income taxes. The trial court denied the respondent's motion, affirming that the judgment order accurately reflected the trial court's findings and orders following the trial, specifically including the allocation of the tax exemption.

¶ 15      The second motion was a five-part motion by the respondent. It alleged that the petitioner was refusing to cooperate with respondent on decision-making for the child, specifically with regard to her representing to the child's daycare that she was the child's only parent and instructing the daycare not to release information about the child to the respondent. It sought a permanent child support order. It sought production from the petitioner of health insurance information for the child. It sought a no-contact order against the petitioner, alleging that the petitioner repeatedly made frivolous calls to the police about the respondent. And it sought an order that the petitioner's attorney no longer be allowed to draft orders due to her previous misrepresentations. The trial court denied the five-part motion as legally insufficient.

¶ 16      The third motion was the petitioner's motion for a rule to show cause against the respondent. It alleged that he was refusing to pay for any of the child's daycare expenses on Wednesdays. The trial court issued the rule to show cause and held an evidentiary hearing *instanter*. It ultimately accepted the respondent's explanation that his withholding of payment was not with malice, but rather it was a result of the fact that he had a motion to vacate the judgment pending, which touched upon the issue of the Wednesday daycare.

¶ 17      The fourth motion was the petitioner's motion for interim attorney fees. It alleged that the motions filed by the respondent were frivolous and that he had filed them for the purpose of frustrating the petitioner and increasing her attorney fees. The trial court ordered the petitioner's attorney to provide the respondent with an accounting of the hours spent responding to his filings, and it continued hearing on the petition to November 29, 2018.

¶ 18                               D. Motions heard November 29, 2018

¶ 19      Between the time of the hearing on October 11, 2018, and the continued hearing on November 29, 2018, the respondent filed 10 additional motions. Some of these involved

amended versions of other motions. Again, the content of these motions that is pertinent to this appeal will be set forth in greater detail in the analysis below.

¶ 20       First, the respondent filed an initial and amended petition for a stalking no contact order, in which the respondent alleged that the petitioner made "bizarre police calls" concerning him and injured him by striking him in the eye and slamming his finger in a door. The trial court denied this motion on the basis that it was legally insufficient.

¶ 21       Second, the respondent filed an initial and amended petition for rule to show cause seeking civil contempt against the petitioner, based on her alleged failure to comply with the shared decision-making provision of the parties' parenting plan agreement. It alleged a number of specific instances in which the petitioner had allegedly failed to abide by this provision, set forth in greater detail in the analysis below. At the hearing, the trial court found that the petitioner's behavior as cited by the respondent was not contumacious or in derogation of the court, and on this basis it denied the respondent's amended petition for rule to show cause.

¶ 22       Third, the respondent filed two motions involving missed parenting time. Both contained substantially the same allegations and sought the same relief. One was styled as a motion to reschedule missed parenting time, and the second was styled as a petition for rule to show cause seeking civil contempt. The trial court granted the respondent's request to reschedule four half-days of missed parenting time. Several dates set forth in the motion were not addressed at the hearing. The trial court denied the request to reschedule missed parenting time from November 1-3, 2018, based on its finding that the petitioner was undergoing surgery then and had offered to allow the respondent to keep the child overnight, but the respondent had failed to adequately arrange for the child's transportation to him.

¶ 23       Fourth, the respondent filed a motion to discontinue Wednesday daycare for the child. It

alleged that he was not working on Wednesdays and was available to care for the child then. The petitioner contended that she wanted the child to be daycare on Wednesdays to interact with other children. The trial court heard evidentiary testimony from the petitioner that the child went to daycare on Mondays, Tuesdays, and Wednesdays, from about 8:30 a.m. until 5:30 p.m. There were approximately 15 children and six providers there. The child was 19 months old. He was provided with activities and interaction with other children as old as age 4. The daycare provided him lunch. His naptime, play time, and meal time were group activities. After hearing testimony and the parties' arguments, the trial court denied the respondent's motion. It found that it was in the best interests of the child to continue with the existing daycare schedule. It found that the interaction that the child had with other children at the daycare, the structure with the staff, the things the child was able to learn while interacting with other children, and the adults who were there to care for the child "gives him a full and rich educational and personal experience, something that he cannot get on a daily basis with a single parent."

¶ 24    Fifth, the respondent filed a motion for an order with language that there was no just reason to delay enforcement or appeal in compliance with Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). That motion referenced the judgment for dissolution of marriage that had been entered on July 16, 2018, and the order for permanent child support entered on October 11, 2018. The trial court found that the motion was legally insufficient and denied it.

¶ 25    Sixth, the respondent filed a motion for the trial court to order the petitioner to pay her 50% of the child's unpaid medical bills within two weeks. The respondent stated in the motion that he had noticed that the unpaid medical bills for the child had risen to over $400, and he attached an itemization of charges as an exhibit. The trial court denied this motion on the basis that the respondent had no standing to bring a motion concerning that portion of the child's medical bills

that he was not responsible to pay.

¶ 26    Seventh, the respondent filed a motion to transfer the child's health insurance from the petitioner's coverage to his coverage. The trial court denied this motion, but it ordered that the respondent's contribution to the premium would be limited to the amount he would have paid if coverage had been transferred to his health insurance carrier.

¶ 27    The respondent filed several additional motions that do not appear to have been specifically ruled upon. One was a motion for the court to order the petitioner to provide the respondent with receipts for payments made to the child's daycare. This motion was discussed at the hearing, although it does not appear to have been specifically ruled upon. Another involved the respondent's motion to change the allocation of parental responsibility to award him sole decision making responsibility regarding all areas of the child's life, including education, health, and religion, and to modify the petitioner's parenting time to supervised visitation. This motion was not addressed at the hearing.

¶ 28    Additionally, the trial court addressed the petitioner's motion for intervening attorney fees that had been continued from the prior hearing. The petitioner sought fees in the amount of $4,025 for responding to the various motions filed by the respondent. In response, the respondent argued that the petitioner should bear her own attorney fees, contending that she had not shown any evidence that she could not pay her own attorney fees or that the respondent had the ability to pay those fees. The petitioner's attorney argued that the motion was not based on ability to pay, but rather it was based on the respondent having filed 13 motions since the trial, many of which were frivolous, which had the effect of causing financial hardship to the petitioner in needing to respond. She argued the respondent's own noncompliance with the court's orders was the reason for the petitioner's motion for interim fees. After hearing argument and reviewing the

numerous motions that the respondent had presented, the trial court found that fees were appropriate not based on a discrepancy of wealth, but rather because of the "numerous and frivolous motions" that the respondent had filed since the matter was resolved at trial. The trial court therefore granted the petition for interim attorney fees and costs, and it ordered a judgment in the amount as amended of $4,025 to be paid to the petitioner's attorney. This appeal followed.

¶ 29                                          II. ANALYSIS

¶ 30                      A. Allocation of parenting time and decision-making

¶ 31        The respondent's first contention in his *pro se* appeal is that the trial court's determination on the allocation of parenting time should be reversed. He requests this court remand the case with directions to the trial court to enter an order awarding him majority parenting time and designating him as the residential parent. He further specifically argues that the trial court erred in its determination not to modify the initial parenting schedule to allocate him parenting time on Wednesdays so the child would not have to be in daycare then.

¶ 32        In support of this argument, he contends that the petitioner works long hours from Mondays through Saturdays, which requires her to be away from the child during that time. He points out that at the time of the trial, the petitioner's mother was caring for the child while the petitioner was at work, and that after the trial, the child has spent long hours at daycare during the petitioner's parenting time. The respondent contends that he has a work schedule that would allow him ample time to care for the child from Wednesdays through Saturdays, and the child's time in daycare would be limited to Mondays and Tuesdays. He contends that, given the child's young age, it is in his best interests to be with his father rather than in a daycare. He contends that his flexible work schedule gives him the ability to personally perform parental functions such as regularly feeding the child well-balanced meals, ensuring his diapers are frequently

changed, taking him to medical appointments, and engaging in play and age-appropriate learning activities. He argues that his ability to perform these functions puts him in a better position to be awarded a majority of the parenting time and named the residential parent. He further argues that he has demonstrated a willingness to place the needs of the child ahead of his own needs, as he has declined to take another job on Wednesdays through Saturdays when he is not working.

¶ 33    Determinations concerning parenting time are governed by section 602.7 of the Illinois Marriage and Dissolution of Marriage Act. 750 ILCS 5/602.7 (West 2018). That section requires a trial court to "allocate parenting time according to the child's best interests." *Id.* § 602.7(a). In determining the child's best interests, the trial court is to consider all relevant factors, including 17 factors specifically set forth in the statute. *Id.* § 602.7(b). In cases involving the allocation of parenting time, a strong presumption favors the result reached by the trial court, which is vested with great discretion due to its superior opportunity to observe and evaluate witnesses when determining the best interests of the child. *In re Marriage of Seitzinger*, 333 Ill. App. 3d 103, 108 (2002); see also *In re Marriage of Bates*, 212 Ill. 2d 489, 516 (2004). "A trial court's determination as to the best interests of the child will not be reversed on appeal unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred." *In re Parentage of J.W.*, 2013 IL 114817, ¶ 55. A judgment is against the manifest weight of the evidence only when the opposite conclusion is clearly apparent. *Id.*

¶ 34    Here, the trial court heard testimony from both parties at the trial. It further received additional testimony during the hearings on the various motions filed by the parties, specifically including the respondent's motion to discontinue daycare on Wednesdays. At the trial and in the hearings that followed it, the trial court was presented with arguments from the respondent consistent with those set forth above. Among the evidence received by the trial court was the

petitioner's testimony that the respondent was not feeding the child solid foods during his parenting time and that she was concerned that the child's nutritional needs were not being met. This was obviously a concern of the trial court also, as it questioned the respondent regarding his willingness to meet the child's nutritional needs and to communicate with the petitioner about what he was feeding the child. Further, the trial court heard evidence regarding the nature of the time that the child spent in daycare during the petitioner's parenting time. The petitioner testified that she wanted the child in daycare during her parenting time on Wednesdays, because she wanted the child to interact with other children. After hearing this testimony and the arguments of the parties, the trial court specifically concluded that it was in the child's best interests to continue to be in daycare on Wednesdays as opposed to modifying the allocation of parenting time to allow the respondent to have parenting time on Wednesdays. We must give great deference to these conclusions of the trial court based on its superior position of having observed and evaluated the witnesses in determining the best interests of the child. *Bates*, 212 Ill. 2d at 516. In light of this, and upon our review of the evidence and arguments on appeal, we do not find that the trial court's initial allocation of parenting time or its refusal to modify that allocation to allow parenting time to the respondent on Wednesdays (including its corresponding determination that the child should continue to be in daycare on Wednesdays) is contrary to the manifest weight of the evidence or that a manifest injustice has occurred.

¶ 35　　The respondent argues that the petitioner has been insufficiently mindful of various medical needs of the child. However, we find no evidence in the record that would support this claim. Although the record does appear to indicate that certain vaccines were overdue sometime prior to November 8, 2018, there is nothing in the evidence to support the respondent's assertion that this "neglect is due to [the petitioner's] hectic work schedule." The respondent also argues that the

provision in the agreed order of May 7, 2018, stating that neither party would make any major non-emergency medical decision prior to the trial date, demonstrates that the petitioner was willing to abuse the child or neglect his medical needs. We reject this argument as meritless.

¶ 36    Related to the allocation of parenting time, the respondent argues that the trial court erred by refusing to consider several motions in which, he contends, he attempted to draw the trial court's attention to the petitioner's alleged actions of endangering the emotional and physical wellbeing of the child.  The first is his emergency motion for sole legal custody filed prior to the trial, in which he contended that the petitioner was ignoring the child's need for a revision of his circumcision. Upon presentment, this motion was continued to the trial date. At the trial, the respondent did not raise the issues concerning the child's need for circumcision or the petitioner's ignoring of it in his arguments for parenting time. As the party filing this motion, it was the respondent's responsibility to request the trial judge to rule on it, and if no ruling was made on the motion, we presume that the respondent abandoned it unless the circumstances indicate otherwise. *Mortgage Electronic Systems v. Gipson*, 379 Ill. App. 3d 622, 628 (2008). As the respondent never requested a ruling on this motion, we find no error on the part of the trial court in failing to address any issues raised in it.

¶ 37    A second motion that the respondent contends the trial court ignored was his motion to change the allocation of parental responsibility to award him sole decision making responsibility regarding all areas of the child's life and to modify the petitioner's parenting time to supervised visitation. In that motion, the respondent alleged that the petitioner had physically attacked him on various occasions, struck him in a way that gave him a black eye and broke his glasses, and slammed a door on his fingers. He also contended that when he picked the child up from the petitioner on November 15, 2018, the child had an injury on his chin that the petitioner could not

explain. However, the record on appeal does not reflect that this motion was properly served or noticed for presentment. The motion's certificate of service states that it was sent via email to the petitioner's attorney on or before November 16, 2018, at 4:00 p.m. However, the "notice of filing" reflects that the motion was noticed for presentment at 9:30 a.m. on November 16, 2018. Such service on the same day as presentment is not proper or sufficient notice. See Cook County Cir. Ct. R. 2.1(c)(i) (Aug. 21, 2000). The written order from that date does not indicate that the petitioner waived proper service, and the record on appeal contains no indication that the trial court or the parties considered the motion to have been properly served or set for hearing with the other motions on November 29, 2018. Regardless, to the extent that the motion was properly before the court on that date, we see no indication in the record on appeal that the respondent ever requested a ruling on this motion, which was his responsibility as the movant. Based on this, we find no error on the part of the trial court in failing to address matters raised in this motion. *Mortgage Electronic Systems*, 379 Ill. App. 3d at 628.

¶ 38    The respondent next makes several arguments under a heading in which he states that "the trial court erred by failing to make a finding that [the petitioner] was unwilling to facilitate a relationship between [the respondent] and the child." Although the respondent's exact argument is unclear, we discern his argument to be that the trial court failed to take into consideration certain facts bearing on the allocation of parenting time and joint decision-making. As part of his relief requested on appeal, he requests that this court enforce the terms of the parenting agreement by ordering proper registration of the child in the presence of both parents in circumstances such as daycare or the hospital, and by ordering that subsequent appointments for health, education, religion, and extra-curricular activities be by agreement of both parents, with both parents being given an opportunity to be present at such appointments. This was essentially

part of the relief that the respondent requested from the trial court in his amended petition for a rule to show cause seeking civil contempt.

¶ 39    In that amended petition for a rule to show cause, the respondent made an argument largely identical to one he makes in his appellate brief. In both that petition and his brief on appeal, he argues that the petitioner has violated the provision that both parents would share in the responsibility of making final decisions for the child in the areas of education, healthcare, religion, and extracurricular activities. He contends that on August 6, 2018, the petitioner "unilaterally made a 'final' daycare decision" by registering the child for daycare, listing herself as the child's only parent, and instructing the director of the daycare not to release any information from the daycare to the respondent. He also contends that on August 10, 2018, the petitioner had unilaterally scheduled a doctor's appointment for August 16, 2018, when he could not attend, and the petitioner made several final decisions regarding the child's health without consulting him. He contends that on August 11, 2018, the petitioner had canceled a doctor's appointment scheduled for August 30, 2018, without prior notice to him. He contends that on October 18, 2018, he had called the office of the child's doctor for an update on a recent medical examination of the child, at which time the receptionist said to him that the hospital had been told by the petitioner not to release any medical information to him. He further contends that he was told by the director of the child's daycare that the petitioner had instructed the daycare not to release any information regarding his registration at the daycare to him.

¶ 40    On appeal, the respondent argues that the trial court "ignored" this petition for rule to show cause. However, the record reflects that the trial court considered this petition at the hearing of November 29, 2018, and it denied the petition on its merits. At the hearing, the trial court asked the petitioner's attorney to respond to the respondent's allegations contained in the petition. The

petitioner's attorney responded to the allegation concerning the petitioner's August 6 decision concerning daycare by stating that the respondent had selected the daycare in which the petitioner had enrolled the child, and he threatened to withhold payment if the child was not enrolled immediately. The petitioner's attorney responded to the allegation concerning the August 16 doctor's appointment by pointing out that the appointment was scheduled for a Thursday, which was normally a day on which the respondent would not be working. As to the allegation concerning the respondent's call to the doctor's office in October, the petitioner's attorney stated that the doctor's office had called the petitioner asking why the respondent kept calling every day asking about it. The petitioner had responded to the doctor's office, "I don't know what to tell you; tell him to look at MyChart." The trial court then heard the respondent's reply to the petitioner's attorney's explanation of the petitioner's conduct on the allegations against her. After doing so, the trial court found that the petitioner did nothing that would cause the court to find her in contempt. It found that her behavior was not contumacious or in derogation of the court, and thus it denied the amended petition for rule to show cause.

¶ 41    A rule to show cause is a method to bring an alleged contemnor before the trial court when the allegedly contemptuous behavior is the failure to comply with a court order. *In re Marriage of Berto*, 344 Ill. App. 3d 705, 711 (2003). Whether a party is guilty of contempt is a question of fact for the trial court, and a reviewing court should not disturb the trial court's determination unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion. *In re Marriage of Benink*, 2018 IL App (2d) 170175, ¶ 43. Here, the record reflects that the trial court gave appropriate consideration to the allegations that the respondent raised in his petition for rule to show cause, and after doing so, it found that the petitioner's conduct was not contumacious or in derogation of the court. We find no abuse of discretion by the trial court

in denying the relief requested in the amended petition for rule to show cause.

¶ 42     The respondent similarly argues that the trial court erred in failing to address the fact that the respondent and child "have consistently been stalked and subject to harassment by [the petitioner's] bizarre and unnecessary calls to the Police." The respondent initially raised these allegations to the trial court at the trial, but the trial court refused to consider them when they were not raised in any pleading. Next, the respondent attempted to raise the allegations as one part of his five-part motion in which he sought a no-contact order against the petitioner. The trial court denied this motion as legally insufficient. The respondent then raised the same allegations in his amended petition for a stalking no contact order, in which he alleged that the petitioner had called the police about him on multiple occasions and also injured his eye and finger. This petition specifically sought relief under the Stalking No Contact Order Act (740 ILCS 21/1 *et seq.* (West 2018)). The trial court denied this motion also as legally insufficient. Under the Stalking No Contact Order Act, an action for a stalking no contact order must be commenced as an independent action unless it is commenced in conjunction with a delinquency petition or a criminal prosecution. *Id.* § 21/20(a). As this is not a case involving a delinquency petition or criminal prosecution, there was no statutory basis for filing the petition for stalking no contact order as part of this case. Thus, we reject the respondent's argument that the trial court erred in failing to address his allegations of stalking and police harassment. Rather, the respondent failed to bring these allegations before the trial court through pleadings that were legally sufficient for the trial court to award the relief he sought. We thus find no error on the part of the trial court in denying the petition for a stalking no contact order as legally insufficient.

¶ 43     Finally, the respondent argues that the trial court erred in failing to reschedule all of the missed parenting time he requested. In his motion to reschedule missed parenting time, the

respondent listed five Saturdays in which he allegedly missed parenting time as well as two unspecified days. The trial court went through the specific dates and awarded the respondent four half-days of makeup parenting time for four of the Saturdays he missed. Although it appears from the transcript that the trial court omitted asking about or ruling on a fifth Saturday (September 22, 2018) and the two unspecified dates prior to the trial of July 16, 2018, it also appears that the respondent failed to bring this omission to the trial court's attention. It was the respondent's responsibility to ask for a ruling concerning these dates. Based on his failure to do so, we find that the respondent abandoned his request to reschedule missed parenting time from September 22, 2018, or from the two unspecified days prior to the trial on July 16, 2018. *Mortgage Electronic Systems*, 379 Ill. App. 3d at 628.

¶ 44       Further, we find that the trial court did not abuse its discretion by denying the respondent's request to reschedule his parenting time from November 1-3, 2018. At the hearing, the respondent acknowledged that the petitioner was undergoing surgery on those dates and had offered to allow him to keep the child overnight then. He stated that he told her that he had plans then that would need to be rescheduled, and she should check back with him. He stated that she failed to do so. He stated that when he contacted her and said that he could keep the child, she cursed him out. He agreed that she told him that she could not get out of bed and drive the child to him, although he stated that her family members on most occasions had been the ones coming to get the child. Based on this, the trial court found that the petitioner had done would she could to facilitate the respondent's parenting time from November 1-3, 2018, and the trial court denied the request to reschedule the respondent's missed parenting time.

¶ 45       A trial court may, in the child's best interests, issue an order requiring makeup parenting time for an aggrieved parent if the trial court finds by a preponderance of the evidence that the

non-aggrieved parent has not complied with allocated parenting time according to an approved parenting plan or court order. 750 ILCS 5/607.5(c)(5) (West 2018). Here, the trial court found that the petitioner had not failed to comply with the respondent's allocated parenting time on November 1-3, 2018. We find no abuse of discretion in this ruling.

¶ 46                    B. Denial of legally insufficient motions or pleadings

¶ 47        The respondent argues that the trial court erred by denying four of his petitions or motions on the basis that they were "legally insufficient." The first is his petition for rule to show cause seeking civil contempt, which requested the rescheduling of parenting time. The allegations of this petition and the relief requested therein were almost identical to the respondent's motion to reschedule missed parenting time, which the trial court granted in part and denied in part. Thus, the almost-identical petition for rule to show cause seeking civil contempt was not denied on the basis that it was legally insufficient.

¶ 48        The second petition that he alleges was denied on the basis of legal insufficiency was his amended petition for rule to show cause seeking civil contempt, involving his allegations that the petitioner was violating the requirement that both parents share in decision-making for the child. However, as we interpret the trial court's ruling, it appears the trial court considered the merits of the respondent's petition and the petitioner's response to the allegations and found that nothing she did would lead the trial court to hold her in contempt. See *supra* ¶¶ 38-41. Thus, it also was not denied on the basis that is was legally insufficient.

¶ 49        The third petition denied on the basis of legal insufficiency was the respondent's motion for a court order with express language that there is no just reason to delay enforcement or appeal in conformance with Illinois Supreme Court Rule 304(a). We agree that the motion was legally insufficient because it failed to identify any order or judgment for which the respondent sought a

finding under Rule 304(a).

¶ 50    The final petition that the respondent challenges as being incorrectly denied as legally insufficient was his amended petition for a stalking no contact order. We have addressed this above (*supra* ¶ 42) and found no error in the trial court's determination that this petition was legally insufficient under the Stalking No Contact Order Act (740 ILCS 21/1 *et seq.* (West 2018)).

¶ 51                              C. Unpaid medical bills

¶ 52    The respondent next contends that the trial court erred in failing to order the petitioner to pay her 50% share of the child's unpaid medical bills at Elmhurst Hospital for which she was responsible under the judgment for dissolution of marriage and to further order that the petitioner pay her share of the child's bills between 14 and 21 days after such bills have been posted to the child's account. The trial court denied the respondent's motion for such relief on the basis that the respondent had no standing to bring a motion concerning medical bills that he was not charged with paying. The respondent contends that this was error.

¶ 53    For a party to have legal standing to assert a claim, that party must have suffered some injury in fact to a legally cognizable interest and must have sustained, or be in immediate danger of sustaining, a direct injury as a result of the complained-of conduct. *Brockett v. Davis*, 325 Ill. App. 3d 727, 730 (2001). Here, the judgment for dissolution of marriage provides that the petitioner and the respondent "shall be equally responsible, 50/50, for any and all costs incurred by the minor, not covered by insurance." It is also undisputed that the portion of the child's medical bills that are unpaid are part of the 50% share for which the petitioner is responsible to pay. The motion before the trial court did not allege that the respondent or the child had suffered any direct injury as a result of the unpaid portion of the bills for which the petitioner was

responsible. It did not allege that Elmhurst Hospital or any other entity has taken or threatened to take any adverse action against him or the child based on the nonpayment of these bills. Accordingly, we agree with the trial court that the respondent lacked the appropriate standing to assert the claim at issue concerning the unpaid portion of the medical bills for which the petitioner was responsible. The trial court did not err in denying this motion.

¶ 54                                    D. Dependent child tax exemption

¶ 55        The respondent next argues that the trial court erred in ordering that the petitioner would be allowed claim the child as a dependent for income tax purposes in even tax years. He contends that the petitioner claimed a tax dependency exemption for the child in tax year 2017, and thus when the judgment for dissolution was entered on July 16, 2018, the petitioner was allowed to claim the exemption two years in a row. He points out that, in the trial transcript, the trial court ordered that the parties could claim the tax exemption "every other year," and thus he contends that the language in the written order is inconsistent with the verbal direction of the trial court.

¶ 56        The petitioner responds that, although the trial court's verbal direction did not specify who could claim the exemption during the first tax year that the order was in effect, the respondent had the opportunity to review the written judgment order and raise objections before its entry. The respondent disputes that he had the opportunity to do so. We note that, in the respondent's motion to set aside the judgment for dissolution for marriage and for a new trial, he made substantially this same argument to the trial court. At the hearing on that motion, he argued specifically that the petitioner had claimed the exemption in tax year 2017 and that he should be entitled to it in tax year 2018. Upon consideration of this argument, the trial court specifically reaffirmed that the written judgment order accurately reflected its order concerning the manner in which it had ordered the parties to share the child tax exemption.

¶ 57　It is the responsibility of the trial court to decide which parent is entitled to an income tax exemption for a dependent child. *In re Marriage of Fowler*, 197 Ill. App. 3d 95, 100 (1989). The allocation of the tax exemption, as an element of child support, is vested in the discretion of the trial court. *In re Marriage of Watkins*, 2017 IL App (3d) 160645, ¶ 31. Here, the trial court was aware that the petitioner had claimed the child dependency exemption in the tax year prior to the entry of the judgment for dissolution of marriage, and it determined that the petitioner would be allowed claim the child as a dependent during the first tax year in which the judgment order was in effect. We do not find an abuse of discretion by the trial court in this determination.

¶ 58　We further reject the respondent's argument in his appellate brief that he should be allowed to claim the tax dependency exemption every year, as it does not appear from the record that any motion requesting such relief was ever presented to the trial court. Issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996).

¶ 59　E. Attorney fees

¶ 60　The respondent's final argument on appeal is that the trial court erred in granting attorney fees to the petitioner in the amount of $4,025. He principally argues that the petitioner presented no evidence that she was unable to pay her own attorney fees or that the respondent had the ability to pay her fees. It is his contention that the petitioner has greater financial resources than he does, and thus she should bear her own attorney fees. In support of this argument, he cites *In re Marriage of Schneider*, 214 Ill. 2d 152 (2005), in which the supreme court stated the law as follows:

> "Section 508 of the [Illinois Marriage and Dissolution of Marriage Act] allows for an award of attorney fees where one party lacks the financial resources and the other

party has the ability to pay. 750 ILCS 5/508 (West 2000). The party seeking an award of attorney fees must establish her inability to pay and the other spouse's ability to do so. [Citation.] Financial inability exists where requiring payment of fees would strip that party of her means of support or undermine her financial stability." *Id.* at 174.

¶ 61     The petitioner responds that the trial court clarified that it did not consider the petition for attorney fees to be based on the petitioner's inability to pay her own fees or any discrepancy in wealth between the parties. Rather, she notes that the trial court stated that it interpreted the petition as alleging " 'what the court considered in *Schneider v. Schneider* [408 Ill. App. 3d 192 (2011),] where the court affirmed and awarded fees under the Illinois Supreme Court Rule 137 when the husband raised the same basis of argument repeatedly.' " Thus, the petitioner points out that the trial court granted the petition not based on discrepancy in wealth, but primarily because of what it characterized as the " 'numerous and frivolous motions' " that the respondent filed since the dissolution of the parties' marriage.

¶ 62     We agree with the petitioner that the trial court's order that the respondent pay the petitioner's attorney fees was intended to be a sanction under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018). Thus, the fact that the petitioner did not establish that she was unable to pay her own attorney fees or that the respondent had the ability to pay her fees is irrelevant if such fees are warranted as a sanction under Rule 137.

¶ 63     This court will not overturn a trial court ruling granting sanctions under Rule 137 absent an abuse of discretion. *Schneider*, 408 Ill. App. 3d at 199. Rule 137(a) provides in pertinent part:

     "A party who is not represented by an attorney shall sign his pleading, motion, or other document and state his address. *** The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document;

that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee." Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018).

Rule 137 is not a method for punishing a litigant whose arguments are unsuccessful, but rather it is a tool by which the trial court can prevent abuse of the judicial process or discipline cases of past abuses. *Schneider*, 408 Ill. App. 3d at 200. A party's good-faith belief that his claims are well-grounded legally or factually is insufficient to avoid sanctions under Rule 137. *Id.* Rather, the party's pleadings must meet an objective standard of reasonableness. *Id.*

¶ 64     The respondent argues that the trial court erred in determining that the motions he filed were frivolous. He argues that the petitioner's repeated acts of misconduct made it necessary for him to file motions drawing the trial court's attention to "snowballing problems." He also argues that the trial court's refusal to hear some of his motions necessitated him filing other motions. He argues that his motions were a good faith attempt by him "to shed light on [the petitioner's] consistent disobedience of court orders, physically abusive behavior, harassment, and police phone calls."

¶ 65     In *Schneider*, this court affirmed the trial court's entry of sanctions under Rule 137 in an

action involving the dissolution of marriage, where the sanctioned party raised the same argument in six different pleadings when it previously had been rejected by the trial court. *Schneider*, 408 Ill. App. 3d at 200. Similarly, in this case, by our count the respondent filed 14 motions in the four months following the trial, in which he repeatedly attempted to readdress issues that had been determined at trial or in the judgment for dissolution of marriage. We need not set these motions forth in detail again, as they are all discussed above. Several of these motions raised the same issues as previous motions. Others were amended versions of pending motions. We reject the respondent's argument that these motions were made necessary by the petitioner's conduct or by the trial court's refusal to hear other motions. Based on the trial court's consideration of these motions, we find that it did not abuse its discretion in determining that the "numerous and frivolous motions" filed by the respondent warranted sanctions under Rule 137.

¶ 66 Finally, the respondent raises several challenges to the petitioner's attorney's itemization of attorney fees that gave rise to the trial court's judgment. However, our review of the record on appeal demonstrates that the respondent never raised in the trial court any challenge to the itemization itself or to the specific charges set forth in it for the work allegedly done. The respondent's brief contains no citation that indicates this issue was ever presented to or decided by the trial court. As stated above, issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal. *Haudrich*, 169 Ill. 2d at 536. For this reason, therefore will not consider this final argument raised by the respondent.

¶ 67                                        III. CONCLUSION

¶ 68 For the reasons set forth above, we affirm the judgment of the trial court.

¶ 69 Affirmed.